# REED'S PETITION.

Where a deed describes the lines of the land conveyed as running to and then bounding upon a road, the grant extends to the centre of the way, unless there is some further circumstance to control the construction of it.

The legislature incorporated the town of Troy, which was taken in part from Marlborough. The description in the charter commenced at the south-west corner of Marlborough, " thence east, two hundred fifteen rods, to the Branch turnpike road in Marlborough; thence southerly on said road to the line of lot No. 9, in Marlborough," &c.—*Held*, that the line extended to the centre of the turnpike road.

Where a common highway is laid over a turnpike road, through several towns, the commissioners, in apportioning the damages to be paid to the turnpike corporation, among the several towns, may take into consideration, along with the distance in each town, the value of the existing road, with reference to the cost of construction and state of repair. But they cannot consider the greater ability of one town to pay, or the greater advantage which its inhabitants would receive from a free highway, and make those matters, in part, the basis of their apportionment.

PETITION in the common pleas, for a highway from a certain bridge in Keene to the old meeting-house in Troy.

The road commissioners, to whom it was committed, reported that the public good required that a highway be laid out in pursuance of the prayer of the petition ;—that they had laid the same, stating the termini, courses and distances ;—and that they had appraised the damages to the Branch Road and Bridge Corporation at the sum of $5475, of which they ordered that the town of Keene pay $175, the town of Swanzey $2415, the town of Marlborough $1285, and the town of Troy $1600.

On the coming in of the report, the towns of Swanzey and Troy objected that the proportion of the damages assessed to those towns was excessive, and disproportionate to the extent of the road in those towns.

It appeared that the highway was laid over the turnpike road of the Branch Road and Bridge Corporation, and that the commissioners did not apportion the damages according to the distance which the road passed in each town, and the state of repair of the road ; but took into consideration the benefit which the inhabitants of the several towns would derive from having a free public highway, and the ability of the towns to pay damages.

It further appeared that the town of Troy was chartered in 1815, after the turnpike was made, a part of it being taken from the town of Marlborough ; and the description of its boundaries, from the south-west corner of Marlborough, being the northwest corner of Troy, was in these words, viz., " thence east, two hundred fifteen rods, to the Branch turnpike road in Marlborough ; thence southerly, on said road, to the line of lot No. 9, in Marlborough," &c.

In 1816 a selectman from each of the towns of Marlborough and Troy perambulated the line of the towns, beginning at the " north-west corner of Troy, at a stake and stones on Swanzey line ; thence running east, two hundred and fifteen rods, to the Branch turnpike road in Marlborough, to a hemlock tree marked ; thence southerly, on said road,

to the south line of lot No. 9, in the fourth range in Marlborough," &c., and made a record of their proceedings.

The hemlock tree which they marked was from one to two rods west of the worked part of the turnpike road.

The commissioners, in apportioning the damages, considered this line between the towns of Marlborough and Troy to be at the centre of the turnpike road.

The questions arising upon the objection were transferred for the decision of this court.

*Edwards*, for the towns of Swanzey and Troy, moved to recommit the report, for an alteration of the apportionment, and contended, 1. That the rule for assessing the damages was the same as in other cases, so far that the commissioners should assess to each town within its limits ; and that the apportionment in this case should be according to the length, character, and condition of the road in each town.

2. That the line of Troy was on the west side of the turnpike road, leaving the entire road along that line in Marlborough ;—that it was evident that the legislature could not have intended to divide the road, from the difficulties which would attend its repair, and also any enquiry respecting the liabilities of the towns for injuries received by travellers in consequence of a want of repairs ;—and that the perambulation in 1816 showed the true construction of the charter, and limited the line to the hemlock tree, and the west side of the travelled way. He cited, on this point, 13 *Mass. R.* 259.

*Handerson, E. Parker, & Putnam*, for the petitioners, argued that this case could not be considered as if no road had been made ;—that the course of the commissioners in apportioning the damages was founded upon equitable principles ;—that the principle was applicable to boundaries upon highways, which governed in cases where land is bounded upon fresh water rivers ;—and that there was no distinction

in the construction of grants, whether they were by individuals, or by states giving lines and jurisdiction to towns.— They cited *Lunt* vs. *Holland*, 14 *Mass. R.* 149 ; *Hatch* vs. *Dwight*, 17 *Mass. R.* 298 ; *Prop'rs of Claremont* vs. *Carleton*, 2 *N. H. Rep.* 369 ; *Warren* vs. *Southworth*, 6 *Conn. R.* 471 ; 3 *Kent's Com.* 348, *and cases cited ; Vattel's Law of Nations* 182, 185.

*Chamberlain*, for Marlborough.

*H. Hubbard*, for the Branch Road and Bridge Corporation.

PARKER, C. J.   The commissioners rightly regarded the centre of the turnpike road as the line between the towns of Marlborough and Troy.   Where there is nothing to control the general language of a grant running to and bounding on a highway, a similar principle applies to that which is well settled in relation to boundaries upon rivers not navigable, and the grant extends to the centre of the way.   15 *Johns. R.* 454, *Jackson* vs. *Hathaway*, Pr. *Platt, J. ;* 3 *Fairf. R.* 463, *Bucknam* vs. *Bucknam ;* 3 *Kent's Com.* 348, [5th *Ed.* 433.]   This construction may be controlled by the particulars of the description, or perhaps by circumstances.   11 *Pick. R.* 193, *Tyler* vs. *Hammond.*   But there is nothing in the language of the charter of Troy which should limit the construction ; nor can we restrict the general terms of it on account of any supposed difficulties respecting the repair of the road, or the remedy of those who may receive injuries by reason of a neglect to repair.

It would undoubtedly be more convenient, had the line been so described as to leave an entire section of the road in one town, and another section in the other, but we have no power thus to construe the charter.

The perambulation in 1816, and the marking of the hemlock by the side of the road, do not change the case.   That merely designates the course and place of the line running

to the road, but does not limit and restrict it from extending to the centre of the road.

But the commissioners erred in the principle upon which they apportioned the damages. In estimating and apportioning the value of the franchise and road taken, they might well take into consideration, along with the distance in each town, the value of the existing road, with reference to the cost of construction and state of repair. These things constituted a part of the value of the thing taken, for which the damages were to be paid. But the greater ability of one town to pay, or the greater advantage which its inhabitants would receive from a free highway, constituted no part of the matter taken from the turnpike corporation; and it is for what is taken from that corporation, that payment is to be made. The damages are to be paid to the corporation, for the property which is taken from it for the public use, and the proportion of the value of that property, within each town, must constitute its proportion of the sum to be paid. For this reason the report must be recommitted.