# WESTERN ELECTRIC COMPANY, INC.,

## *v.*

# JERSEY SHORE REALTY COMPANY.

[Submitted May 1st, 1922.   Decided May 11th, 1922.]

1. Where an option described land north of a certain brook, a deed made in pursuance thereof, and not conveying to the brook, will be reformed so as to convey the land described in the option.

2. Where an option called for the conveyance of land north of a certain brook, and the conveyance did not convey the land up to the brook, even if waivers were established by the purchasers taking part in the survey, acceptance of the conveyance under protest prevents their being estopped from seeking reformation of the conveyance.

3. Such option, in the absence of express words of exclusion, calls for a conveyance to the centre line of the brook.

4. A conveyance of land bounded on a stream above tidewater, carries the title of the grantee to the centre of the stream, if the grantor's title extends so far.

On bill, &c.

*Mr. George E. Quigley,* for the complainant.

*Messrs. Durand, Ivins & Carton,* for the defendant.

FOSTER, V. C.

Complainant seeks a decree to compel the specific performance of an option agreement given by defendant to complainant under date of August 28th, 1919, for the sale of part of the property known as the "Foxhurst Farm," near Deal, in Monmouth county.

The dispute between the parties is over one of the boundary lines of the property, and it arises out of the following circumstances:

The option in question reads, "We agree to give you the option to purchase of ninety days from October 1st, of the northerly part of said farm, containing about seventy acres, which includes all land north of Poplar brook, and the easterly portion containing about nineteen acres south of the brook, and on the easterly line of said farm at the sum or price of $225 per acre."

Poplar brook is a non-navigable stream about twelve feet wide.

By a letter dated September 27th, 1919, complainant accepted the option and a formal contract for the sale and conveyance of the property was dated October 1st, 1919, and executed on October 25th.

Prior to the acceptance of the option and the execution of the formal agreement, the property was surveyed and from the plot of this survey was secured the description which is contained in the contract and in the deed for the property which

was executed on December 21st, 1919, and this description differs from the description of the option which calls for the conveyance of "all land north of Poplar brook," in that an arbitrary line is described as the southern boundary of the property, which does not come within one hundred and forty-six feet of the northerly line of the brook at one point, nor within twenty-seven feet at another point.

The execution of the formal agreement by complainant and its acceptance of the deed containing this description were made under formal protest, and the contract was executed and the conveyance accepted under this protest because complainant, prior to the execution of the formal contract, had expended about $25,000 in preparing the property for a radio station and had increased this expenditure to about $35,000 at the time the deed was delivered.

Two explanations are given to account for the location of the southerly line of the property at the distances mentioned from the northerly line of the brook; one is by Mr. Bown, an employe of complainant, who assisted in making the survey, to the effect that the reason the survey and description show and describe a straight line some distance north of the brook, instead of indicating the course of the brook, is because of the fact that at the point where the straight line begins there was considerable underbrush extending to the brook, which prevented a clear sight being taken from that point westerly following the course of the brook; that, in consequence, offsets were taken producing this straight line, but indicating at various points its distance from the northerly line of the brook; the other explanation is offered by Mr. Ross, the treasurer of the defendant company, who dictated the option agreement, and it is, that defendant did not desire thereby to deprive complainant of any of the property extending to the north bank of the brook, but that defendant never intended that this description would give to complainant title to the lands to the centre line of the brook; that he did not consider the loose description contained in the option would be binding, and that he knew when he dictated the option that the ownership and control of the brook was necessary and advantageous to defendant in connection with the use of the southerly

portion of the farm for pasture, and in protecting cattle from danger from electric wires which complainant might place in the brook, if it had title to the centre thereof. The variation in the description is also attempted to be justified by the claim that Mr. Bown, in participating in making the survey, thereby waived complainant's right to have the southerly line of the property run to the brook. The evidence does not show any such waiver, nor does it show any authority in Mr. Bown to make the waiver of any part of the option, and this comment also applies to the claim of waiver said to have been made by complainant's engineering department, as well as to the claim of waiver of the description in the option resulting from the execution of the formal contract and the acceptance of the deed under protest. On the claims of waiver defendant insists that complainant is estopped from obtaining the relief it seeks. But if the waivers were established, and they are not, it is well settled that no estoppel arises if performance is accepted, as it was here, under protest. *Oram* v. *New Brunswick, 64 N. J. Law 19; 40 Cyc. 259.*

In view of the admission of Mr. Ross that complainant's title should extend to, but not beyond, the northerly line of the brook, there remains but one question to be considered, and that is complainant's contention, that as the correct description of the land it purchased, under the option, included all land north of Poplar brook, this description, in the absence of express words of exclusion, by implication of law, entitled it to a conveyance to the centre line of the brook.

Defendant contends that this extension of the boundary line to the centre of the brook would cause it great inconvenience and might result in loss and in injury to cattle pasturing on other lands owned by it on the southerly side of the brook, and that Mr. Ross had these matters in mind in dictating the option, but because he is not a lawyer he did not know it was necessary to be particular in the use of the language he employed in giving the option. While it is probably true that an extension of the boundary line to the centre of the brook will cause defendant some inconvenience, the retention of this line to the side of the brook will likewise cause inconvenience to complainant, and be-

cause of changes in the volume of water in the brook, at different seasons of the year, there will always be uncertainty about the fluctuating location of the southern boundary of its property.

Both reason and authority support complainant's contention that in the absence of an expressed contrary intent, it is the rule that a conveyance of land bounded upon a stream, above tidewater, carries the title of the grantee to the centre of the stream, if the title of the grantor extends that far (*Arnold* v. *Mundy*, *6 N. J. Law 1; Attorney-General* v. *Del. & B. B. R. R. Co.*, *27 N. J. Eq. 631* (at *p. 638*) ; *Kanouse* v. *Slockbower, 48 N. J. Eq. 42; Tiff. R. Prop. (2d ed.) 1656; 9 C. J. 187*) ; and therefore the decree asked for will be advised.