GILL *v.* HEDGECOCK.

4-7491                                          184 S. W. 2d 262

Opinion delivered December 18, 1944.

*Seth C. Reynolds,* for appellant.

*John J. DuLaney,* for appellee.

McHANEY, J. Appellants own lands in Sevier county and appellees own lands in Little River county. Little River is the boundary between their respective tracts and is also the boundary between the said two counties. The lands of appellants are described as being "north of the river," but appellees' lands are not described with reference to said river. Little River county was created by Act 104 of 1867, p. 217, which fixed the north boundary of the county at this point as the north bank of Little River.

This action originated as an interpleader's suit, brought by Little River Sand & Gravel Development, a partnership, engaged in removing and selling sand and

gravel from the bed of Little River, against appellants and appellees to have the court determine the line between their lands and the amount of compensation due each for the sand and gravel taken from their respective lands. It is conceded, and the court so found that Little River at this point is a non-navigable stream.

The contention of appellants in the court below and here is that the boundary line between their property and that of appellees should be a line running in the river equi-distant from high bank to high bank, while appellees claim and contend that they are the owners of the entire bed of the stream from high bank to high bank. The trial court did not sustain either contention. It appointed an engineer and special master to make a survey of the river between their lands, and to determine or locate the center of the stream of Little River; to make a map or plot thereof and to report his findings to the court. This was done, and the court found that the river had gradually through the years since the government survey of 1837 changed its course to the south and east, leaving accretions, and that such accreted land belonged to the original owners; and that the river, being non-navigable, although meandered by the government survey, the respective riparian owners have title to the land and to the sand and gravel to the center of the stream as it stood at the time of the excavation and removal of said materials. The court also found that ''the center of the stream is the middle thread of the main, regular, continuous and flowing stream at . . . low water stage the year around or practically so.'' And the court held that appellants owned the sand and gravel to the north and west of such line, and that appellees owned that to the south and east of said line. Later the court ordered a distribution of the funds in court deposited by the interpleader who reported to the court the amount of material taken from each party's land. Neither the appellants nor the appellees were satisfied with the decree, and there is here an appeal and a cross-appeal.

We think the court correctly determined the rights of the parties. In other words, appellants are riparian owners on an non-navigable stream and are entitled to the rights of such owners, even though their lands are described as lying "north of the river," and even though also the northern boundary of Little River county is fixed in the act creating it as the north bank of Little River. We see no intent of the Legislature in the act to change the well-settled rule of law of riparian owners on non-navigable streams or lakes. We think appellants are riparian owners, and if they are, then the trial court was correct in rendering the decree it did render, and appellees admit that if appellants are riparian owners, then appellees' contention that they own all the bed of the stream from high bank to high bank is untenable. Our most recent case holding that riparian owners of land on a non-navigable stream take to the center of the stream is *McGahhey v. McCollum, ante,* p. 180, 179 S. W. 2d 661.

The general rule, supported by the great weight of authority, regarding the boundary line between owners of land bordering on non-navigable streams is stated in 8 Am. Jur., p. 761, § 22, as follows:

"In all rivers deemed to be non-navigable, the presumption is that the boundary line between owners of lands bordering on streams or watercourses is in the middle thread of the watercourse. When such lands are conveyed with the stream or watercourse described as a boundary, it is frequently held that there is a presumption that the grantor intends that the boundary of the lands of the grantee should extend to the middle of such stream or watercourse. An intent that the soil in the river should be owned by a person who does not own the abutting upland is so improbable that it will never be presumed in the absence of an express exception in the grant. It has been said that the abutting owner owns the bed of a non-navigable stream to the thread of the water, even though his land is nominally bounded by the margin of the stream in his conveyance, though such a holding seems extreme."

Again in § 24, same volume, it is said:

"The general principle is that in order to restrict title to the edge of a watercourse the bed of which belongs to the upland owners, there must be a reservation or restriction expressed or necessarily implied which controls the operation of the general presumption that title extends to the middle of the stream or highway. The statement in many of the cases that nothing short of an express reservation of the bed of the stream will overcome the force of the presumption that the grantor intends to convey all the land he owns under water has usually been construed, in the application of the rule, to mean a reservation inferable from the terms of the description. As a general rule, however, if the language in the description of boundaries is clear, that should control and should not be narrowed and limited by any mere ambiguity in the subsequent statement of the appurtenances to the grant."

See, also, § 25, for particular descriptions of boundary lines on rivers, such as "to the river, and thence up the river" and even "thence on the river shore," which have been held to carry the boundary lines of the owners to the thread of the stream. The conveyances from the United States to the state and from the state through *mesne* conveyances to appellants describe their land as being "north of river," meaning north of Little River, and making the river the boundary line, and there is nothing in any conveyance to rebut the legal presumption, above quoted, that their line and that of all their predecessors in title extended to the thread of the stream or river. It was not the intention of the Act of 1867, creating Little River county, to disturb any vested rights of owners of land included in said county. We, therefore, affirm on the direct and cross-appeals on this point.

Another argument made on the cross-appeal of appellee consists of an attack on the order of the court allowing C. E. Johnson, Jr., attorney for the interpleader, a fee of $150 out of the funds paid into court

by the interpleader. Mr. Johnson was not a party to the action in the court below, and he cannot be made a party here by cross-appeal. If appellees thought the court erred in allowing a fee for interpleader's attorney, they should have appealed directly from such order and within the six months allowed for appeals to this court.

Affirmed on cross-appeal on this point.