JOHNSON *v*. SMITH.

4-8816                                              219 S. W. 2d 926

Opinion delivered May 2, 1949.

*Keith & Clegg,* for appellant.

*Smith & Sanderson,* for appellee.

GEORGE ROSE SMITH, J.  Cypress Lake, as meandered by Government surveyors in 1841, was a long narrow body of water that crossed the Northwest Quarter of Section 29, Township 16 South, Range 25 West, in a northwesterly direction, isolating a triangle of 8.78 acres in the northeast corner of the quarter.  This case involves the title to the east half of the segment of lake bed lying in the quarter section.  The appellees, Smith and Mrs. Blocker, who own land on the west side of the lake, brought suit to quiet their title to the disputed strip.  There were originally two classes of defendants: (a) Appellants Johnson and wife, who own the land on the east side of the lake and assert title as riparian owners, and (b) the State and its oil and gas lessees, who asserted ownership on the theory that the lake is navigable.  At the first hearing these appellants and appellees successfully joined forces against the State claimants and obtained a decree finding that Cypress Lake is a non-navigable body of water.  The decree was entered without prejudice to the present controversy,

which was reserved for determination at a later trial. The State and its lessees did not appeal from the first decree and have passed out of the case.

At the second hearing the question was that of ownership as between the appellants and the appellees. This dispute has its roots in a number of past transactions. The appellees bought the farm on the west side of the lake in 1919, their deed describing this particular tract as all that part of the quarter section lying west of the lake. Appellee Smith testified that there was then a fence along the east bank of the lake, which his grantor pointed out as the eastern boundary. There was testimony that the lake bed was then practically dry and that appellees' vendor had used it as a pasture.

In 1924 appellees bought the farm east of the lake, now owned by appellants, the deed describing this tract as all that part of the quarter section lying east of the lake. Appellees mortgaged this second farm to Cantley, as receiver of a land bank. In 1935 Cantley foreclosed his mortgage and bought in the property. Thus at that time appellees had record title to the land lying west of the lake and Cantley to that lying east of it. Of course the presumption would be that each riparian title extended to the center of the lake. *Gill v. Hedgecock*, 207 Ark. 1079, 184 S. W. 2d 262.

Appellees rely mainly upon an oral agreement between them and Cantley, by which an agreed boundary was fixed in the latter part of 1939. According to the testimony T. H. Albers, as Cantley's agent, employed a surveyor to run the boundary line between the two farms. The surveyor fixed the line along the east bank of the lake bed and prepared a plat in accordance with his survey. Appellee Smith, who testified that he was acting for himself and his cotenant, was present when the survey was made and says in effect that he and Albers agreed upon the line.

Soon after the survey was made Cantley forwarded to Smith a quitclaim deed by which Smith was to disclaim any interest in the farm east of the lake. The deed recited that a metes and bounds description had not been

definitely determined for that part of the quarter section lying "north" of the lake—this being the same land as that east of the lake, as the tract is both north and east of the bed. The deed also recited that Smith and Cantley agreed that the legal and permanent description should be as follows—after which there was inserted a metes and bounds description that followed the surveyed line along the east bank. Smith executed the deed, which was filed for record by Cantley in December, 1939. Later a copy of the surveyor's plat was attached and the deed was again recorded in January, 1940. It is conceded that the deed was shown in appellants' abstract of title when they bought their farm.

Cantley sold the land east of the lake to appellants in 1943, but instead of using the surveyor's description he described the tract as all that part of the quarter section lying east of the lake. Appellants contend that as riparian owners they have title to the center line of the lake bed. Appellees base their claim principally upon the agreed boundary line. The chancellor found that the appellees own the entire lake bed.

The testimony concerning the oral agreement is very persuasive. Both Smith and the surveyor testified that the purpose of the survey was to establish the boundary line. Appellants question the proof of Albers' authority to act for Cantley, but we think that there was sufficient evidence apart from Albers' declarations. Cantley paid the surveyor by check and also sent his check to Smith for the consideration recited in the quitclaim deed. That deed was prepared by Cantley, and it recognized the line determined by the surveyor. Later Cantley executed an oil and gas lease containing this same metes and bounds description. These circumstances connect Cantley so closely with the transaction that it may fairly be inferred that Albers was in fact his agent in having the survey made.

Appellants also insist that certain elements of a valid boundary line agreement are wanting. The rule is that such an agreement will be sustained when there is uncertainty as to the true boundary and when the

agreement is followed by possession according to its terms. *Peebles* v. *McDonald,* 208 Ark. 834, 188 S. W. 2d 289. Here the evidence as to the existence of uncertainty and as to possession in conformity to the agreement is in such conflict that it would be a difficult task to determine where the preponderance lies. A decision of that question, however, is not necessary to the disposition of the case.

We cannot be certain that all pertinent evidence considered by the chancellor is before us. The decree recites that the cause was heard upon the oral evidence taken at the first hearing as well as that heard at the second trial. The testimony adduced at the earlier hearing is not in the record here. Unless we can say that it could not have any bearing upon the issues now presented, we must assume in fairness to the chancellor and to the appellees that the omitted evidence supported the decree.

At the first trial the issue was navigability of the lake. Several allegations in the complaint are relevant both to that issue and to the situation existing when the oral boundary agreement was made. It was stated in the complaint that appellees have had adverse possession of the property for twenty-eight years, from which it might follow that the boundary line has become uncertain. It was alleged that the lake bed has been in cultivation; that the meandered bank line has been obliterated by deposits of sediment; that the lake was drained in 1918 and became dry land; and that it has no usefulness for navigation purposes. According to the evidence at the second hearing some of these allegations are exaggerated, to say the least; but it will be remembered that appellants and appellees made common cause against the State claimants at the first trial. It is safe to assume that they made the strongest possible showing of non-navigability, and it would certainly have been helpful for them to prove that the lake bed had actually been cultivated for many years. Such evidence may easily have shed light also on the issues we are now considering.

Even though the first decree was entered without prejudice to the present dispute, it does not follow that the trial court may not have considered the evidence then submitted when he reached his decision at the second hearing. If the appellees expected him to do so, there was no need for them to submit their proof a second time. Since the recitals in the decree indicate that the chancellor did consider the earlier proof, we have no assurance that we have been furnished with all pertinent evidence. We must therefore affirm the decree.