2010 Ark. App. 531
**John CRUM, Appellant**

v.

**James and Patricia CRAIG, Appellees.**

**No. CA 09–1203.**

Court of Appeals of Arkansas.

June 23, 2010.

Russell D. Berry, Berry Law Firm, Stuttgart, for appellant.

Carl J. Madsen, Stuttgart, Rufus T. Buie, III, Boyd & Buie, DeWitt, for appellees.

COURTNEY HUDSON HENRY, Judge.

The Arkansas County Circuit Court established appellant John Crum's bound-

aries along two sections of Crooked Creek in Arkansas County and declared that his neighbors, appellees James and Patricia Craig, made reasonable use of the creek water. For reversal, appellant contends that the court's decisions were clearly erroneous. We agree with appellant as to one of the boundary lines and reverse and remand on that point. We affirm the remainder of the circuit court's order.

## I. Background facts

Crooked Creek is a large, non-navigable stream that cuts a winding course through the farm land of Arkansas County. As it nears the property owned by appellant and appellees in Township 3 South, Range 6 West, the creek moves southward through the eastern part of section 28 until it approaches section 33 to the south. It then makes a sharp turn to the northwest, flows across the western line $|_2$of section 28, loops southward, and curves back into section 33, forming a horseshoe. At that point, the creek continues northeasterly across section 33, crosses back into the southeastern part of section 28 and moves to the east. Farther south in section 33 is another winding stream, the Bayou Meto.

On July 11, 1953, the estate of Paulina Crum conveyed separate tracts of property in section 33 to Nelson Crum and A.J. Crum. Nelson received 203 acres bounded on the south by the center line of Bayou Meto and on the north by the "south high bank of Crooked Creek." A.J.'s land encompassed sixty acres lying "north and west of the South high bank of Crooked Creek." The conveyance to A.J., combined with his preexisting ownership of property to the north in section 28, gave him control of the northern and southern prongs of Crooked Creek's horseshoe. In 1954, he placed earthen dams across both prongs, creating a horseshoe lake to the west called Glenwood Lake. The lake

served as a source of water for irrigation, and the record shows no objection by Nelson to the dams. At the same time that A.J. built the dams, he constructed a forty-foot-wide cut-through from the northern prong to the southern prong, just east of both dams, which allowed the creek to bypass the dams and continue its flow toward the south and east.

Through a series of conveyances between the 1960s and the 1990s, appellant and appellees succeeded Nelson and A.J. as the owners of property in sections 33 and 28. In essence, appellant obtained the land between Bayou Meto on the south and the south high $|_3$bank of Crooked Creek on the north in section 33 and the land east of the cut-off in section 28. Appellees acquired the creek and the lake in section 33 and the land west of the cut-off's east bank in section 28. Appellees' property included the dams on both prongs of the creek.

The present controversy began in 2006 when appellant cut through appellees' southern dam and caused water to escape from Glenwood Lake into Crooked Creek. Appellees asked the circuit court to enjoin appellant's actions, and appellant responded with a counterclaim that questioned the location of the parties' boundaries and accused appellees of interfering with his usage of the creek water. As more fully developed at trial, appellant asserted that 1) his property along Crooked Creek in section 33 and along the cut-off in section 28 extended into the bed of each waterway, and 2) appellees' pumping of creek water into Lake Glenwood violated Arkansas's reasonable-use theory of riparian ownership.

The circuit court, after hearing several days of testimony and viewing numerous exhibits, declined to extend appellant's ownership into the creek bed in either section 33 or section 28. Instead, the

court relied on a 1995 survey commissioned by appellees to establish the parties' boundaries along the south high bank of Crooked Creek, as that bank existed in 1953, and along the eastern bank of the cut-off. The court's order effectively vested appellees with ownership of the streams in both areas. The court also ruled that appellees' use of the creek water was reasonable. Appellant filed this timely appeal.

## II. Standard of review

In appeals from a bench trial, we will not reverse the circuit court's findings of fact unless they are clearly erroneous. *Davenport v. Burnley*, 2010 Ark. App. 385, 2010 WL 1790780. The resolution of disputed facts and the determination of witness credibility are within the province of the fact-finder. *See id.*

## III. Property in section 33

Appellant argues first that his northern boundary in section 33 should extend to the center of Crooked Creek, or at least partway into the creek. Although the language in the deed to appellant's predecessor, Nelson Crum, conveyed property only to the south high bank of the creek, appellant argues that, under the supreme court's holding in *Nilsson v. Latimer*, 281 Ark. 325, 664 S.W.2d 447 (1984), a deed containing a call to a bank conveys title to the center of the waterway, unless there is a specific reservation of the bed by the grantor or a clear manifestation of such intent. *See, e.g., Person v. Johnson*, 218 Ark. 117, 235 S.W.2d 876 (1950); *Gill v. Hedgecock*, 207 Ark. 1079, 184 S.W.2d 262 (1944) (holding that a grant "north of" a body of water conveyed title to the middle of the water). The circuit court in the present case acknowledged the *Nilsson* rule but found that the grantor-estate manifested an intent to exclude Nelson

Crum from ownership of the creek bed. We cannot say that the court's finding is clearly erroneous.

The deed to Nelson mentioned two streams, Crooked Creek and Bayou Meto. The grantor extended the southern boundary of Nelson's property to the center thread of one of them, Bayou Meto. By contrast, the deed terminated Nelson's northern border at the southern bank of Crooked Creek. Read as a whole, the conveyance demonstrates that the grantor exercised the option to convey to the center of one stream but declined to exercise that option as to the other. The deliberateness of that decision evidenced an intention to withhold ownership of the creek bed from Nelson and to reserve it for the other grantee, A.J. Furthermore, the conveyances to Nelson and A.J. involved simultaneous, interlocking deeds, one of which granted the creek in its entirety to A.J. and the other of which granted only the land south of the creek to Nelson. The transfer of the property in this manner again demonstrated a conscious choice by the grantor to invest A.J. with exclusive control of the creek. It does not defy logic for the grantor to favor A.J. with ownership of the creek in that Nelson received a greater number of acres and his property contained another water source to the south.

A similar situation occurred in *Kilgo v. Cook*, 174 Ark. 432, 295 S.W. 355 (1927). Kilgo's deed described property on both sides and along the bed of War Eagle Creek. Cook acquired a subsequent deed to property that ranged "west to War Eagle Creek." Despite Cook's land extending "west to" the creek, the supreme court held that Cook's ownership did not extend to the creek bed because he had notice of Kilgo's deed granting complete ownership of the creek. The court in *Nilsson* overruled certain aspects of *Kilgo* but agreed

with its result and held that Kilgo's deed, known to Cook as expressly conveying the bed of the creek, "defeated the presumption" that Cook's property would extend to the creek bed. *Nilsson,* 281 Ark. at 329, 664 S.W.2d at 449–50. By the same token, the circuit court in the present case could have concluded that appellant's predecessor was charged with knowledge of a simultaneous deed from a common grantor that conveyed the creek in its entirety to another grantee.

■ Appellant argues, however, that the legal description of his property changed when he acquired the property from Nelson in 1974 and that appellees, who did not obtain their property until 1995, took with notice of that change. Appellant's 1974 deed does contain a description that differs from the 1953 deed in that it purports to convey property along a line "two (2) feet below the top of a concrete state highway marker located at the South end of the down stream dam...." The description, if valid, would increase appellant's holdings in section 33 to include part of the creek. Yet, the original 1953 deed from the estate to appellant's predecessor did not convey any part of the creek. Consequently, the predecessor could not convey part of the creek to appellant. A grantor cannot transfer greater title than he has, and a grantee cannot receive greater title than his grantor has. *Stewart v. First Commercial Bank,* 59 Ark. App. 47, 953 S.W.2d 592 (1997). Moreover, the evidence at trial cast doubt on the significance of the concrete marker. Appellant gave conflicting accounts as to the origin of the marker's appearance in the description, and the description in his mortgage of the property made no mention of the marker. Additionally, surveyor Don Sheffer testified that he found no prior surveys that showed the marker, and appellee James Craig testified that the marker was situated at the end of the south dam to monitor the lake level. In light of these factors, we see no clear error in the court's disregard of the 1974 deed description.

As an alternative argument, appellant contends that, even if his boundary line does not extend to the center of Crooked Creek under the *Nilsson* rule, his line should run along the south high bank of the creek as it existed in 1953, the year of the original conveyances to Nelson and A.J. The circuit court relied on a 1995 survey by Sheffer to establish the bank's location, but appellant contends that the court erred in doing so and that the correct location is in fact closer to the water than what the survey shows.

According to appellant, A.J.'s damming of Crooked Creek and the creation of Glenwood Lake in 1954 elevated the water level in section 33 and submerged the original south high bank. Appellant produced maps and aerial photographs that pre-dated the dam construction and noted the location and types of various trees to make his point. His claim of an elevated water level, however, does not necessarily equate to a change in the location of the south high bank. *See generally Boyd v. Greene County,* 7 Ark. App. 110, 644 S.W.2d 615 (1983) (holding, in the case of navigable watercourses, that neither the line of the high-water mark, the ordinary low-water mark, nor middle stage of water necessarily delineates the bed of a stream from its banks). The court therefore was not required to establish appellant's boundary in accordance with this proof.

Furthermore, Sheffer testified that the survey represented his best effort and professional opinion as to the location of the south high bank at the time of the 1953 conveyances. He stated that he established the parties' boundary line, as represented by the high bank, with reference to various monuments that appellant volun-

tarily pointed out during the survey, including the concrete highway marker. The survey line in fact passes directly through the marker. Additionally, appellee James Craig testified that the south high bank had not changed in more than fifty years.

More detailed testimony regarding the bank's location came from forester Jeff Denman. Denman observed trees along the creek, including a sixty-eight-year-old post oak, and he placed the oak at the highest elevation along the bank, virtually right on the survey line. Denman concluded that the post oak marked the place where the creek would "spill over its banks" during a flood. He also said that he would not expect to see much movement of the high bank after the dams were erected and that the high bank predating 1953 was the same as the high bank after 1953.

By all accounts, the task of locating the south high bank of the creek as it existed more than fifty years ago proved difficult. However, the surveyor believed that he had done so, and other evidence supported his conclusion. Conflicts in the evidence existed, but such conflicts were for the circuit court to resolve as the fact-finder. *Davenport, supra.* Given these circumstances, we find no clear error in the court's decision to locate the parties' borders in section 33 in accordance with the 1995 survey.

## IV. Property in section 28

Appellant argues next that the *Nilsson* presumption applies to the parties' boundary line along the Crooked Creek cut-off in section 28 and that he should own to the center of that part of the stream. The facts are that, in 1972, A.J. Crum deeded appellant the land "east of Crooked Creek cut-off."[1] Such a conveyance is presumed to carry to the center of the cut-off under *Nilsson, Person,* and *Gill, supra.* However, in later years, appellees obtained a deed to property "West of the East Bank of Crooked Creek cut-off," which would give them ownership of the entire cut-off. The circuit court ruled that appellant's ownership did not extend into the cut-off. We hold that the *Nilsson* presumption does apply in this instance and that appellant's boundary should reach to the center of the cut-off thread.

Unlike the "mirror" deeds that conveyed the land surrounding Crooked Creek in section 33, the deed to appellant in section 28 represented a lone conveyance with no apparent intent by the grantor to reserve in himself or any other person ownership of the creek bed. As a result, the *Nilsson* presumption was not overcome and the riparian conveyance to appellant extended his ownership to the center thread of the cut-off. Appellees' subsequent deed did not change what the law had already granted to appellant. *See Person, supra.* We therefore reverse and remand that portion of the circuit court's order establishing the parties' boundaries along the Crooked Creek cut-off. Our remand is with directions to extend appellant's ownership to the center of the cut-off and to enter an order sufficiently describing the parties' boundary line. *See Boyster v. Shoemake,* 101 Ark. App. 148, 272 S.W.3d 139 (2008).

## V. Appellees' water usage

In 1999, appellees began pumping water out of the cut-off and into Glenwood

---

1. The 1972 correction deed also conveyed to appellant the property in section 28 "South of the High Bank of Crooked Creek on the north." The word "High" in the deed was marked through by an unknown person. The alteration, however, has no effect on the issues before us. Appellant's argument on appeal solely concerns the property east of the Crooked Creek cut-off. We therefore limit our discussion to that part of the conveyance.

Lake at times when the lake was low. Appellant acknowledged that appellees' pumping was reasonable when Crooked Creek maintained a water flow, but he asked the court to enjoin appellees from pumping during the dryer months. At those times, appellant claimed, appellees' pumping reduced his water source for irrigation and required him to employ more expensive methods for obtaining water, such as the digging of wells.

██ Arkansas follows the reasonable-use theory in determining the water-usage rights of riparian landowners. *Harris v. Brooks,* 225 Ark. 436, 283 S.W.2d 129 (1955); *South Flag Lake, Inc. v. Gordon,* 2009 Ark. App. 276, 307 S.W.3d 601. The theory provides that each owner has an equal right to make a reasonable use of waters, subject to the equal rights of other owners to make a reasonable use. When one lawful use of water interferes with or detracts from another lawful use, a question arises as to whether, under all the facts and circumstances of that particular case, the interfering use shall be declared unreasonable. *Harris, supra.* In determining what is reasonable, courts may consider, among other things, the purpose of the use; the extent, duration, necessity, and application of the use; and the nature and size of the stream. *Id.* We examine a circuit court's ruling on this issue under the clearly erroneous standard of review. *See Nilsson, supra.*

██ Both parties in this case used the creek for irrigation, which is a reasonable use. *Harris, supra.* The creek is large, measuring hundreds of feet across at some points and carrying a depth of eight feet. Appellees' tenant, Dwight Carter, testified that he pumped water from the cut-off but only to a certain level because pumping when the water was too low would damage his equipment. Carter stated that, in three years' time, he had pumped water

from the cut-off only once in the summer months when there was no creek flow. Given the proof on this point, we decline to reverse the circuit court's finding of reasonable usage. Though appellant offered testimony that was contrary to Carter's, the issue of credibility was for the circuit court to resolve. *Davenport, supra.*

Affirmed in part; reversed and remanded in part.

HART and GLOVER, JJ., agree.