[981 NE2d 236, 957 NYS2d 640]

JAMES KNAPP et al., Respondents, v JAMES R. HUGHES et al., Appellants.

Argued September 12, 2012; decided October 18, 2012

**POINTS OF COUNSEL**

*Sullivan Papain Block McGrath & Cannavo P.C.*, New York City (*Brian J. Shoot* of counsel), and *Coughlin & Gerhart, L.L.P.*, Binghamton (*Robert R. Jones* of counsel), for appellants. The Appellate Division's "waters edge" ruling was wrong both in terms of the governing precedent and in terms of the cogent policies underlying that precedent. (*Gouverneur v National Ice Co.*, 134 NY 355; *Seneca Nation v Knight*, 23 NY 498; *Stewart v Turney*, 237 NY 117; *White v Knickerbocker Ice Co.*, 254 NY 152; *Hammel v Camp Ranger, Inc.*, 275 App Div 23, 300 NY 602; *Waters of White Lake, Inc. v Fricke*, 282 App Div 333, 308 NY 899; *Land & Lake Assn. v Conklin*, 182 App Div 546; *Confer v Pirman*, 247 App Div 825; *Town of Guilderland v Swanson*, 29 AD2d 717.)

*Law Office of Patrick J. Kilker*, Binghamton (*Patrick J. Kilker* of counsel), for respondents. I. The Appellate Division was right when it determined that language in a deed which runs title to

the "edge" of a small inland non-navigable pond is an express reservation of the lands under the waters of the pond. (*Gouverneur v National Ice Co.*, 134 NY 355; *Halsey v McCormick*, 13 NY 296; *White v Knickerbocker Ice Co.*, 254 NY 152; *Waters of White Lake, Inc. v Fricke*, 282 App Div 333, 308 NY 899; *Hammel v Camp Ranger, Inc.*, 275 App Div 23; *Confer v Pirman*, 247 App Div 825; *Calkins v Hart*, 219 NY 145; *Hardin v Jordan*, 140 US 371.) II. The court below failed to acknowledge the validity of a corrective deed. (*Hart v Blabey*, 287 NY 257; *Heath v Hewitt*, 127 NY 166; *Lipton v Bruce*, 1 NY2d 631.)

### OPINION OF THE COURT

SMITH, J.

It has long been established New York law that a conveyance of land on a pond or stream includes the land under the pond or stream, to the center of the water, unless a contrary intention is made clear. We reaffirm that principle in this case, and hold that its application does not depend on minor variations in the language of the conveyance.

## I

Defendants own land on the shore of Perch Pond. Both plaintiffs and defendants claim to be the owners of the land under the pond that is adjacent to defendants' waterfront land. Both thus claim to have the exclusive right to use that part of the pond for swimming, fishing and other purposes.

The parties' claims depend on the interpretation of two 1973 deeds from Anthony and Marilyn Furlano to defendants' predecessors in title. According to defendants, these deeds conveyed both waterfront land and land under the water; plaintiffs say that only the waterfront land was conveyed.

It is undisputed that the Furlanos owned both waterfront and submerged land. Anthony Furlano had received in 1968 a deed conveying land "along the edge of Perch Pond." That deed added the words: "The Grantor further conveys any rights which he may have in and to the lands under the waters of Perch Pond which bound and abut unto the lands hereinabove conveyed." But when the Furlanos sold most of their land in 1973 to defendants' predecessors in title, the conveyances they gave echoed the first of the quoted phrases from the 1968 deed, but not the second: the 1973 deeds conveyed land "along the waters [sic] edge of Perch Pond" and "along the edge of Perch Pond." Plaintiffs, claiming under a 1993 deed by which the Furlanos

conveyed their remaining waterfront property and "all remaining lands of Grantors," assert that the 1973 deeds conveyed only the land next to the water, not the land under it, and that all the submerged land once owned by the Furlanos passed by the 1993 deed to plaintiffs' predecessors in title.

Plaintiffs brought this action to enjoin defendants from interfering with or using the underwater property "and the water thereon." Supreme Court granted summary judgment for defendants, but the Appellate Division modified and ruled in plaintiffs' favor on the issue now before us, holding that the 1973 deeds "set the boundaries at the *edge* of the pond, a phrase which touches the land and not the water" (*Knapp v Hughes*, 25 AD3d 886, 890 [3d Dept 2006]). After further proceedings, Supreme Court entered a judgment from which we granted defendants leave to appeal (18 NY3d 827 [2011]), bringing up for review the Appellate Division's earlier order on summary judgment. We now reverse.

## II

It seems highly likely that most purchasers of waterfront property assume that they are acquiring not only the dry land, but the right to use the water also. Who would buy land on a pond or stream, if informed that he or she could only look at the water, not boat on it or fish or swim in it? This common-sense point was recognized by our court in *Gouverneur v National Ice Co.* (134 NY 355, 364 [1892]): "The value, such as they have, of small non-navigable lakes and ponds as a general rule is mainly in their relation to the adjacent lands."

Even before the *Gouverneur* decision, our case law supported the rule that a purchase of waterfront property is presumed to include the adjacent underwater land. In *Seneca Nation v Knight* (23 NY 498 [1861]), we interpreted a conveyance of land "along the meanders" of Cattaraugus creek, and held that the land conveyed ran to the center of the river. We said that parties "may . . . if they will" restrict their grants to shore land, "but the restriction ought to be found in very plain and express words" (*id.* at 500).

In *Gouverneur*, we expressed a similar thought:

> "The boundaries are described as along the pond; and unless in some manner qualified or restricted they by legal construction had the effect to embrace its bed within their grants. This in such case is the

presumed intent unless the contrary appears" (134 NY at 365).

In *Stewart v Turney* (237 NY 117, 121-122 [1923]), we said:

"If the grantor desires to retain his title to the land . . . underneath the water the presumption must be negatived by express words or by such a description as clearly excludes it from the land conveyed."

In *White v Knickerbocker Ice Co.* (254 NY 152, 156 [1930]) we reiterated the words of *Seneca* and *Gouverneur*:

"The value, such as they have, of small non-navigable lakes and ponds, as a general rule, is mainly in their relation to adjacent lands. If the parties mean to exclude the land under water, they should do so by express exception; the restriction ought to be framed in very plain and express words."

And in *Hammel v Camp Ranger, Inc.* (275 App Div 23, 25 [3d Dept 1949], *affd* 300 NY 602 [1949]), the Appellate Division said:

"The rule that the terms of a grant are to be liberally construed in favor of the grantee has special emphasis as to a grant of land bordering upon a small inland body of water. It is uniformly held that in such instance there is a very strong presumption that the grantor intended to convey his ownership under water, at least to the center, and that nothing short of an express reservation will overcome its force" (internal quotation marks and citation omitted).

From the statements we have quoted, it might seem obvious that the 1973 Furlano deeds, which contain no "plain and express" reservation of rights to land under the water, must be read as conveying that underwater land to defendants' predecessors. The issue is more complicated, however, because several cases contain dictum to the effect that a small change in the words of a deed could create a reservation of underwater rights. Thus in *Gouverneur*, in which we interpreted deeds conveying land "along Hinckley pond" and "along said pond" to include land to the pond's center, we said that "a boundary line described as 'along the shore' of a fresh-water stream does not extend the grant to its center" (134 NY at 365). And in *White*, where we held that a conveyance "along the south side of the Rockland Lake" conveyed land to the center, we said that

a conveyance of land "by the shore" or "to the bank" (254 NY at 156) or "to the edge or margin of the lake" (*id.* at 158) would convey only shore land. On the other hand, in *Hammel*, we affirmed the Appellate Division's holding that a conveyance of land "along said Pleasant Pond shore" and "to run along the said Pleasant Pond and to run to the low water mark thereof" included land to the center of the pond; the Appellate Division said that these words would not suffice to reserve rights to underwater land, even if they were "synonymous with 'margin', 'edge' or 'side' of the pond" (275 App Div at 26).

■ ■ These dictums are not consistent, but those in *Gouverneur* and *White*, especially the reference in *White* to the words "edge . . . of the lake" as insufficient to convey land under water, might seem to support plaintiffs' position, and the holding of the Appellate Division here; the 1973 Furlano deeds conveyed land "along the edge of Perch Pond," and the *White* dictum implies that such a grant is limited to the land adjoining the water. We conclude, however, that this and similar dictums were mistaken and should not be followed. The effect of a grant should not turn on such fine distinctions as that between "side" and "edge." To make a plain and express reservation of rights to underwater land, a grantor must do more than use the word "edge" or "shore" in a deed. He or she must say that land under water is not conveyed, in those words or in words equally clear in meaning. In the absence of an explicit reservation, a grant of land on the shore of a pond or stream will be held to include the adjoining underwater land, except in unusual cases where the nature of the grant itself shows a contrary intention.

Such an unusual case was *Matter of Brookfield (Sarles)* (176 NY 138 [1903]), the only case we have found in which this Court held that a conveyance of property adjacent to a body of water reserved to the grantor rights in underwater land. The grantee in *Brookfield* was the owner of a mill on a river near a pond, who wanted to build a dam that would flood the pond's shore. The grantor was the owner of part or all of the pond, and the land around it. The grant included only land "that will be overflowed . . . in consequence of the erection" of the dam, and the land was conveyed "only for the purpose of being flowed by said pond" (176 NY at 138-139). Thus in *Brookfield* the terms of the grant strongly supported an inference that the grantor meant to transfer only shore, not underwater, land.

It is true that there is language in *Brookfield* similar to the *Gouverneur* and *White* dictums that we reject today. We said in *Brookfield*:

"when the boundary line is along the side, the edge, the border or the margin of a highway, stream or pond, the parties will be held to have intended to limit the lands conveyed to that within such boundary, and not to that which constitutes the body of such highway, stream or pond" (*id.* at 145).

But this language too was dictum. The result in *Brookfield* did not turn on the words chosen to describe the boundary: indeed, those words, "all the land on both sides of . . . Byram pond," are indistinguishable from the words that we later interpreted in *White* as including underwater land. The *Brookfield* result followed from the limited nature of the grant in that case.

In this case, nothing in the Furlanos' 1973 conveyance of title to defendants' predecessors shows an intention to withhold underwater lands from the grant. Since the deeds do not expressly exclude underwater lands, they must be read as conveying such land, to the center of the pond, to defendants' predecessors.

Accordingly, the judgment appealed from and the order of the Appellate Division, insofar as brought up for review, should be reversed, with costs, and judgment granted to defendants declaring their rights to underwater land in accordance with this opinion.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

Judgment appealed from and order of the Appellate Division, insofar as brought up for review, reversed, etc.