ON MOTION FOR REHEARING

SAWAYA, J.
Appellee has filed a motion for rehearing stating that he “does not contest the *1166 court’s analysis with respect to the canal.” He does contend, however, that summary judgment in Bischoffs favor regarding the land underlying the pertinent part of the lake bordering her property is inappropriate because material issues of fact and law exist that are not yet resolved. After further review, we conclude that material issues of fact and law exist regarding Bis-choffs claim in Count II of her second amended complaint concerning her ownership of the lands under the pertinent part of the lake. We therefore grant Appellee’s motion for rehearing, withdraw our previously issued opinion, and substitute the following.
This case involves a dispute between two adjoining property owners, Rhoni Barton Bischoff and Robert Walker, regarding ownership of the land underlying a canal and part of a lake that both owners agree are natural and non-navigable bodies of water. Part of the lake borders both properties to the south. The canal that provides access to the lake divides the two properties. This dispute made its way to the trial court via a three-count complaint filed by Bischoff against Walker seeking: in Count I, a declaratory judgment that she had riparian rights to the lake and canal; in Count II, to quiet title to the boundary between the two properties; and in Count III, a declaration that the property description in her deed, which used monuments (the lake and canal) rather than metes and bounds to describe the property she purchased, be reformed to expressly identify her ownership to the centerline of the canal and to part of the lake. The trial court granted summary judgment in favor of Bischoff as to Count I.[1] Bischoff appeals the Summary Final Judgment entered against her on Counts II and III of her complaint, contending that the trial court erred in holding that she has no ownership interest underlying the canal and lake that borders her land. We reverse the summary judgment under review as to Counts II and III and remand this case to the trial court to enter summary judgment in favor of Bischoff on Count II regarding the submerged land to the centerline of the canal and for further proceedings as to Bischoffs claim in Count II regarding the land underlying the part of the lake that borders her property. The remainder of this opinion will only address the issue relating to Bischoffs ownership of the submerged land to the center of the canal.
The dispute stems from the language used in Bischoffs deed, which she received when she purchased the property in February 2000. It describes the land she purchased as follows:
That part of the Northeast 1/4 of the Southeast 1/4 of Section 8, Township 22 South, Range 32 East, Orange County, Florida lying East of Canal and North of Lake, LESS the East 100 feet and LESS the North 30 feet thereof for road right-of-way.
(Emphasis added). Bischoff argues that because the deed describes her western boundary by reference to a monument, i.e., the canal, as opposed to a metes and bounds description, the case law holding that ownership extends to the centerline of a monument is applicable and she thus owns the submerged land to the center of the canal.
*1167 Walker, on the other hand, takes the position that Bischoffs deed gave her the land east of the canal. She did not receive the land under the waters to the halfway point of the canal because the deed only gave her to the edge of the canal and nothing more. He claims that he owns all the land under the canal, at least insofar as the canal separates their two properties, and he is opposed to Bischoffs plan to build a dock, deck, and boathouse on his property.
Walker purchased his property from the common grantor several months after Bis-choff purchased her land. His property lies to the west of Bischoffs land and is separated therefrom by the canal. His deed described his purchase:
The East 1/2 of the Southeast 1/4 of the Southeast 1/4 of Section 8, Township 22 South, Range 21 East, Orange County, Florida LESS that part of NE 1/4 of the SE 1/4 of the SE 1/4 lying East of Canal and North of Lake and Less the East 100 feet thereof and Less N. 30 feet for road right-of-way and LESS Beginning 358.24 feet West and 30 feet South of the Northeast corner of the Southeast 1/4 of the Southeast 1/4; run South 36° East 244.65 feet; West 295.06 feet; North 197.00 feet; East 150 feet to the point of Beginning, Section 8, Township 22 South, Range 32 East, Orange County, Florida.
(Emphasis added). In other words, Walker’s deed describes his parcel of land and excludes from this grant the land already deeded to Bischoff. Thus, if Bischoffs deed gave her ownership to the centerline of the canal, then Walker owns the land under the waters from the centerline back to his own property, but if Bischoffs deed gave her the land only up to the edge of the canal, then Walker owns all of the land under the canal separating their properties.
The facts leading up to the suit Bischoff filed are not in dispute. There was a dilapidated dock extending into the canal from Bischoffs side of the canal when she purchased her land. She was assured by the sellers and real estate agent that this was her dock. This was important to her because she is a professional water skier and wanted to use the lake as a practice area.
In 2002, Bischoff applied for a permit from Orange County to build a dock, deck, and boathouse into the lake. Walker made known to the authorities his objection to the proposed dock being built on his land and provided surveys performed by a state-certified surveyor. The Environmental Protection Division (EPD) of the County denied Bischoff permission unless she could establish her ownership of the submerged land. The EPD wanted an official, signed and sealed survey with full legal description provided by a certified survey contractor showing her ownership of the land on which she wanted to build the dock. The letter advised that if the EPD did not receive this information within 30 days, the application would be considered expired.
Bischoff abandoned her plans for the lake and turned her attention to obtaining a permit to replace the existing dock in the canal. The County originally gave her permission, but rescinded it pending resolution of Walker’s challenge to her ownership claim. To settle the dispute as to the ownership of the land under the pertinent portion of the canal, Bischoff filed suit.
Both parties moved for summary judgment, and the trial court rendered the Summary Final Judgment that we now review, concluding that as to Count I, “Plaintiff has riparian rights and those rights include the right to build a dock to wharf out to the water. The construction of the dock is subject to approval of local *1168 government authorities as to location, size, and use.” However, as to Counts II and III, the trial court rejected Bischoff s contention that she owns to the center of the canal by concluding that Walker was the owner of the pertinent land underlying the body of water.
Bischoff argues that the trial court erred in holding that the boundary line at issue was not the centerline of the monument referenced in her deed. Bischoff is correct that by using “east of canal” the grantor was conveying by reference to a natural monument. A “monument,” when used in describing land, is defined in section 472.005(11), Florida Statutes (2011), as meaning
an artificial or natural object that is permanent or semipermanent and used or presumed to occupy any real property corner, any point on a boundary line, or any reference point or other point to be used for horizontal or vertical control.
Here, the canal is a natural monument and, as both parties agree, a non-navigable body of water.[2] The question is whether “east of’ includes to . the center of the canal. The presumption is that ownership extends to the centerline of a monument unless a contrary intent is clearly expressed:
[ I]n all rivers, streams, or other watercourses deemed to be nonnavigable, the presumption is that the boundary line between owners of lands bordering on the watercourses is in the middle thread of the watercourse. When such lands are conveyed with the stream or watercourse described as a boundary, there is a presumption that the grantor intends that the boundary of the lands of the grantee should extend to the middle of such stream or watercourse. An intent that the soil in the river should be owned by a person who does not own the abutting upland is so improbable that it will never be presumed in the absence of an express exception in the grant.
12 Am. Jur. 2d Boundaries § 17 (2012) (footnotes omitted); see also 1 Joyce Palomar, Patton and Palomar on Land Titles § 127 (3d ed.) (“The boundary lines may themselves be imaginary or they may be marked by a fence, wall, highway, stream, or like natural or artificial line. These latter are also termed monuments. If thus marked, the centerline of the monument, in the absence of statement to the contrary, is taken as the boundary.”); see generally George A. Locke, Annotation, Deeds: Description Of Land Conveyed By Reference to River or Stream as Carrying to Thread or Center or Only to Bank Thereof—Modern Status, 78 A.L.R.3d 604 (2012) (hereafter “Locke”); 4 Herbert Tiffany and Basil Jones, Tiffany Real Property § 995 (2012 ed.) (“The question now arises as to when, in case of land under water not belonging to the state, a conveyance of land as abutting on the water will be construed as including such land under the water as belongs to the grantor. The general rule of construction of a conveyance of land bounded by water is that, unless a contrary intention appears, it passes the soil towards the center of the water as far as the grantor owns.”). Patton and Palomar explains the widespread nature of this principle and the reason therefor:
All states follow the English rule that lands bounded by nonnavigable rivers and streams carry the title of the bed of the water course to the center thereof. *1169 A grantee will, of course, receive all of the title of the grantor unless a contrary intention is clearly shown. This is consistent with the ordinary rule that a call to a monument carries to the middle of the monument and prevents the wasteful creation of strips of property that would be of little value to the holder thereof but would greatly impair the value of the upland tract.
Patton and Palomar, at § 134 (footnotes omitted).
Adverting to Florida case law, unless a contrary intent is clearly expressed by the grantor, a presumption arises that the boundary line “when the land is bounded by a nonnavigable stream or highway, extends to the center of such stream or highway, if the grantor is the owner of the fee.’ ” Smith v. Horn, 70 Fla. 484, 70 So. 435, 436 (1915) (quoting 2 Devlin on Deeds § 1024 (3d ed.)). The supreme court also quoted language from Devlin stating that if the deed described the land conveyed as extending to a street and then running at right angles along the street, “the fee of the land to the center of the street is conveyed....’” Id. This rule, the court observed, “must be applied to carry out, and not to frustrate the intention of the parties.” Id.; see also Brooks v. City of W. Miami, 41 So.2d 556, 557 (Fla.1949) (holding that “[bjounded ... on the East by [the road]” included to the centerline of the road and that absent any controlling authority to the contrary, “the same rule obtained which applied to boundaries on nonnavigable streams and that the center of the highway became the boundary line” (citing In re Reed’s Petition, 13 N.H. 381 (N.H. 1843))); cf. Bd. of Trs. of Internal Improvement Trust Fund v. Walker Ranch Gen. P’ship, 496 So.2d 153 (Fla. 5th DCA 1986) (observing that had legislative intent not controlled, “[a]n argument can be made in support of the trial court’s finding based on the general surveying principle that the centerline of the monument (here, the shore) is regarded as the boundary line” (citing 1 Fla. Jur. 2d, Adjoining Landowners § 19)), review denied, 504 So.2d 766 (Fla.1987). The principle has been referred to as a presumption that may be rebutted by proof to the contrary. Jacksonville, T. & K.W. Ry. v. Lockwood, 33 Fla. 573, 15 So. 327, 329 (1894) (writing of a controversy involving the boundary line of land, that “the presumption arising from the deed from [the grantor], conveying the land, and bounding it on the east by Thompson street, is, in the absence of proof to the contrary, that [the grantor] owned to the center of the street” and thus conveyed to plaintiff the lands to the center of the street). Indeed, the authorities are replete with citations to case law holding that reference to a monument is presumed to run to the center of the monument. See, e.g., Locke; Jay M. Zitter, Annotation, Conveyance with Reference to Tree or Similar Monument as Giving Title to Center Thereof, 61 A.L.R. 5th 739 (2012). Accordingly, the conveyance in Bischoff s deed by reference to the monument of the canal creates the presumption that the boundary ran to the centerline thereof.
Similar to the Florida courts, the courts in other jurisdictions have adopted the centerline presumption. In the analogous case of Henry v. Borushko, 281 P.3d 729 (Wyo.2012),[3] the Wyoming Supreme. Court recently upheld the conclusion that the boundary ran to the center of a canal *1170 where the deed conveyed land “lying North of Midvale Irrigation District Pavil-lion Main Lateral.” As in the instant case, the adjoining landowners disputed ownership of the land lying under the canal’s waters; one claimed to the opposing bank, as does Walker, and the other claimed to the centerline of the canal, as does Bis-choff. The supreme court reasoned:
Because the canal shared pertinent attributes with non-navigable streams and streets, the district court relied on this legal guidance for use in interpreting deeds:
In the case of non-navigable watercourses and roads and streets as boundary calls in legal descriptions, the general rule is there is a rebutta-ble presumption that where a non-navigable stream or a street or road is the boundary between two parcels, the actual boundary is along the thread of the stream or the middle of the street. Wilson v. Lucerne Canal and Power Co., 150 P.3d 653, 665 (Wyo.2007). 12 Am. Jur. Boundaries, § 17, § 29. The same rules of construction hold true with common walls. Coumas v. Transcontinental Garage [68 Wyo. 99], 230 P.2d 748, 753 (Wyo.1951).
Applying'this presumption, the district court concluded that the deed should be interpreted as establishing the property boundary at the centerline of the canal. It further determined that the evidence presented by the Henrys “fails to rebut the presumption” that the boundary was at the center of the canal.
The Henrys’ first argument is that the deed does not explicitly state that the boundary is at the “center” of the canal. That is true, but it is also true that the deed does not explicitly state that the boundary is on the “north bank” of the canal or “along the fence north of the canal.” Because no particular part of the canal is expressly designated as the boundary, the district court was correct in employing the presumption that the center of the canal was intended. As we explained in Glover v. Giraldo, 824 P.2d 552, 554-55 (Wyo.1992):
Where a deed describes land bounded by a non-navigable stream and names the stream as- a monument, a presumption exists that the grant extends to the center and the thread of the stream is the true boundary. The grant will give title so far as the grantor owns, unless the bed of the stream is expressly reserved from the grant. This rule is based on a presumption of the grantor’s intent.
Id. at 731-32. Consequently, the language “lying north” of the monument was held to include to the centerline of that monument. Accord Carter Oil Co. v. Delworth, 120 F.2d 589, 590 (7th Cir.1941) (“By his deed to Gerald Weaber, therefore, Louis Wea-ber, in the language, ‘all the land north of the creek and all of the land south of the creek,’ included title in each instance to the center of the creek, unless there is in the record evidence to establish a different intention.”); Council v. Clark, 246 Ark. 1110, 441 S.W.2d 472, 473-74 (1969) (holding that under deed description “lying South of Hurricane Creek,” title extended to the middle of Hurricane Creek (citing Gill v. Hedgecock, 207 Ark. 1079, 184 S.W.2d 262 (1944) (holding that a grant “north of’ a body of water conveyed title to the middle of the water))); Helmer v. Castle, 109 Ill. 664 (Ill.1884) (holding that conveyance of land described as “east half of the southeast quarter, south of road” meant the tract of land on the south side *1171 of the road, extending to the centerline of the road); W. Elec. Co. v. Jersey Shore Realty Co., 93 N.J. Eq. 587, 117 A. 398, 400 (1922) (holding that “in the absence of an expressed contrary intent, it is the rule that a conveyance of land bounded upon a stream, above tidewater, carries the title of the grantee to the center of the stream if the title of the grantor extends that far”); Knapp v. Hughes, 19 N.Y.3d 672, 957 N.Y.S.2d 640, 981 N.E.2d 236, 2012 WL 4933274 (2012) (holding that language in deed stating the property line ran “along the southerly bounds of Perch Pond” also conveyed the rights to the land under the water; observing, “It has long been established New York law that a conveyance of land on a pond or stream includes the land under the pond or stream, to the center of the water, unless a contrary intention is made clear.”). See generally Annotation, Specific Description with Reference to Water, in Conveyance of Riparian Land, as Marking the Extent of Grantee’s Ownership of the Submerged Land and the Shore, Part II “Presumption as to Extent of Grant of Land Bounded Generally by a Body of Non-navigable Water,” 74 A.L.R. 597 (1931).
Thus, Florida law is in accord with the general rule adopted by the courts in other jurisdictions that there is a rebuttable presumption in favor of finding the boundary is the centerline of the monument referenced in the deed — here, the canal. To rebut the presumption, Walker would have had to present evidence of the grantor’s intent not to convey to the centerline of the canal. He did not. In fact, he does not acknowledge the presumption. Instead, Walker’s position on appeal is that summary judgment was proper because there were no facts at issue, and he argues on appeal that no extrinsic evidence should be considered in deciding what the deed meant. In the absence of evidence rebutting the presumption, summary judgment in favor of Bischoff was appropriate.
In summary, we affirm the trial court’s summary judgment in Bischoffs favor on Count I that Bischoff has riparian rights to the waters of both the canal and lake. We reverse the summary judgment in favor of Walker on Counts II and III. In accordance with the relief Bischoff requests in Count II, we remand this case for entry of summary judgment in her favor that she owns the submerged land to the centerline of the canal. We remand for further proceedings insofar as Count II also raises an issue regarding the ownership of the pertinent submerged lake land, which issue, we acknowledge, the parties may opt not to pursue given that the resolution of Count I granting Bischoff riparian rights to the lake may fully resolve the parties’ dispute. We believe it is unnecessary to grant Bischoff the relief she requests in Count III.
AFFIRMED in part; REVERSED in part; REMANDED.
ORFINGER, C.J., and PALMER, J„ concur.

. Walker has cross-appealed, arguing that the court erred in entering summary judgment in favor of Bischoff on Count I of her complaint. We affirm the summary judgment in favor of Bischoff regarding Count I and conclude that our holding regarding Bischoffs ownership to the land under the canal renders the issues raised in Walker’s cross-appeal regarding the canal moot.

. Title to lands under navigable water is held by the State pursuant to article X, section 11, of the Florida Constitution.

. Walker asserts that no out-of-state case law is relevant on the issue of boundary lines and deed language, citing Macnamara v. Kissimmee River Valley Sportsmans’ Ass’n, 648 So.2d 155, 159 (Fla. 2d DCA 1994) (involving ownership of lands created by meandering navigable waterways), review denied, 651 So.2d 1195 (Fla.1995). He is wrong. Not only does the instant case involve non-navigable waters, which excerpts the case from many Florida- *1170 unique issues (and from Macnamara), out-of-state case law demonstrating how various courts have interpreted identical language aids this court's understanding and analysis of the presumption that the centerline of a monument is the proper boundary line.